JUDGE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR03-291L |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| PAUL DOUGLAS REVAK, | ) | |
| Defendant. | ) | |
| | ) | |

## I.    STATUS OF CASE

Paul Revak is scheduled to be sentenced on December 5, 2003 by the Honorable Robert S. Lasnik. Mr. Revak entered a plea of guilty to attempted possession of explosives, a violation of 18 U.S.C. § 844(b), on September 19, 2003. A Presentence Report has been completed and reviewed by Mr. Revak and counsel. We have no objection to the Guideline calculations included in the Presentence Report and we do not anticipate the need for an evidentiary hearing at the time of sentencing.

## II.    RECOMMENDATION

We respectfully concur with the Probation Department's recommendation of five years probation under the conditions described in the Presentence Report.

FEDERAL PUBLIC DEFENDER
1111 Third Avenue, Suite 1100
Seattle WA 98101
(206) 553-1100; fax (206) 553-0120

## III.    **DISCUSSION**

### A.    **BASIS FOR RECOMMENDATION**

The Presentence Report provides an unfiltered look at the facts that led to Mr. Revak's conviction and a full discussion of the Court's sentencing options.  After detailing sentencing purposes, the Probation Department presented its view that five years' probation provides the best sentencing option because

> This longer supervision term will allow for the Probation Office to closely monitor the defendant and chart his progress for an extended period of time, which better serves the long-term goals of minimizing public risk and providing the tools to perpetuate positive change in the defendant.

We believe that the Probation Department's long-range vision is exactly right for this case.  Supporting discussion is set forth below.  We address first the government's objection to the Guideline calculations in the Presentence Report.

### B.    **THE GOVERNMENT'S GUIDELINE OBJECTION**

The government recommends 16 months imprisonment followed by a three-year term of supervised release.  This recommendation assumes a total offense level of 12 and a sentencing range of 10-16 months imprisonment.  The Probation Department found the total offense level to be 10 and the sentencing range 6-12 months.  It is the government's position that "the defendant knew or had reason to believe (the explosive material) was stolen," triggering a two-level increase in the base offense level under USSG § 2K1.3(b)(2).  The Probation Department concluded that the evidence does not support the government's view.  We agree with Probation.

The government bears the burden of proving by a preponderance of the evidence that Mr. Revak knew or had reason to believe that the explosives he attempted to obtain were stolen.  The facts that led to Mr. Revak's conviction for attempted possession of explosives arose out of a meeting between Mr. Revak and an undercover law enforcement agent that

DEFENDANT'S SENTENCING
MEMORANDUM - 2
(Paul Douglas Revak CR03-291L)

**FEDERAL PUBLIC DEFENDER**
1111 Third Avenue, Suite 1100
Seattle WA 98101
(206) 553-1100; fax (206) 553-0120

1    occurred on June 5, 2003, the date that appears in the charging Information.  The meeting was

2    arranged by a friend of Mr. Revak's who was operating as a confidential informant.  The

3    meeting was captured on an audio and video recording device that had been put in place by

4    the government.  Paragraph 16 of the Presentence Report accurately details relevant

5    information from the recording.  The meeting lasted for more than an hour.  Ultimately, the

6    undercover agent offered to provide Mr. Revak with a small sample of C4 to test and also

7    offered to teach him how to make that substance.  Never was the source of the C4 discussed.

8    The undercover agent neither stated nor suggested that the material he was to supply had been

9    stolen.  The conversation that led to Mr. Revak's arrest and conviction provides no basis to

10   find that the defendant knew or had reason to believe he was being offered stolen explosives.

11           To support its argument, the government points to a conversation that took place

12   between Mr. Revak and his informant/friend several days prior to the June 5 meeting with the

13   undercover agent.  In that conversation, the informant, knowing that Mr. Revak had no access

14   to explosives, offered to introduce him to a friend of hers who might be able to supply C4.  In

15   the course of the conversation, the informant made a vague and passing reference to

16   servicemen walking off military bases with C4.  The comment was disconnected in context

17   and time from the conversation on June 5 that led to Mr. Revak's arrest.  The comment was

18   not memorable and cannot fairly be said to have provided Mr. Revak notice that he was

19   dealing with stolen explosives.  We respectfully believe the Guideline calculation contained in

20   the Presentence Report is accurate and the sentencing range is 6-12 months.

21           Beyond the insufficiency of the government's proof, a question exists as to whether

22   USSG § 2K1.3(b)(2) can be used at all in this case given that no explosive material ever

23   existed.  By its terms, the enhancement applies if (1) the offense "involved explosive

24   materials" and (2) the defendant knew or had reason to believe it was stolen.  This

25   enhancement embraces the sense that greater culpability attaches to explosives offenses that

26

DEFENDANT'S SENTENCING
MEMORANDUM - 3
(Paul Douglas Revak CR03-291L)

**FEDERAL PUBLIC DEFENDER**
1111 Third Avenue, Suite 1100
Seattle WA 98101
(206) 553-1100; fax (206) 553-0120

1    <u>involve</u> stolen materials.  This notion of increased harm and culpability is not implicated when

2    no actual explosives are involved.  There is no federal court precedent examining the meaning

3    of the phrase "involved explosive material."  In the absence of precedent, the issue becomes a

4    matter of statutory construction.  Using principles of statutory construction, several factors

5    operate against the enhancement.

6         To begin, at least vernacularly, a crime does not "involve" something if that thing does

7    not exist.  <u>See</u> Black's Law Dictionary Online, defining "involve" as "to have as a necessary

8    feature or consequence."  This notion is supported in § 2K1.3's other enhancement section

9    which clearly requires the existence of actual explosives material.  Section 2K1.3(b)(1)

10   provides for enhanced sentences based upon the weight of the explosive involved and includes

11   instructions for calculating that weight.  Application Note 5 explicitly allows only inclusion of

12   "the weight of the <u>actual</u> explosive material." (Emphasis added.)  These instructions would be

13   nonsensical if law enforcement could simply assert an imaginary weight of explosive

14   materials as the basis for enhancing a defendant's sentence under § 2K1.3(b)(1).  Principles of

15   statutory construction favor a consistent reading of the parts of a statute.  Section 2K1.3(b)(2)

16   should not apply absent existence of actual stolen explosives.

17        At best, this Guideline is confusing and ambiguous under the facts of our case.  When a

18   Guideline is ambiguous in its application, a court should invoke the Rule of Lenity.  <u>See</u>

19   <u>United States v. Luna-Diaz</u>, 222 F.3d 1, 3 n. 2 (1st Cir. 2000); <u>United States v. Diaz</u>, 989 F.2d

20   391, 393 (10th Cir. 1993) (both adopting the Rule of Lenity to resolve ambiguities in

21   Guideline applications in favor of the defendant).  The ambiguity here should be resolved in

22   favor of Mr. Revak.

23        In sum, the facts of this case do not support use of § 2K1.3(b)(2).  We agree with the

24   calculation contained in the Presentence Report.

25

26   

DEFENDANT'S SENTENCING                                    **FEDERAL PUBLIC DEFENDER**
MEMORANDUM - 4                                            1111 Third Avenue, Suite 1100
(Paul Douglas Revak CR03-291L)                            Seattle WA 98101
                                                         (206) 553-1100; fax (206) 553-0120

## C.    BALANCING SENTENCING PURPOSES

At the heart of the Probation Department's recommendation is its view that the sometimes conflicting purposes of sentencing, public safety and rehabilitation, are both positively addressed through long-term supervision of Mr. Revak. We believe a balanced consideration of Mr. Revak's background and the circumstances of the offense bolsters the Probation Department's position. Mr. Revak is bright, industrious, capable, has the support of a stable and loving family and enjoys strong community support. Mr. Revak's potential, when coupled with the resources and guidance offered through structured, long-term supervision, suggests a strong prognosis for a crime-free future. Mr. Revak's age and the nature of his crime (which necessarily suggests a need for mental health counseling) emphasize the unique importance of long-term supervision in his case. The government's recommendation would sacrifice two years of supervision in favor of six additional months of confinement. This approach, we think, does not best address public safety concerns.

Our recommendation rests in part upon a different assessment of Mr. Revak's criminal propensity than the government's. In its sentencing memorandum, the government argues that Mr. Revak's "concrete plans to blow up government facilities" support the need for imprisonment. We believe that what Mr. Revak had in mind was neither firm nor clear.

Mr. Revak did talk about blowing up a government facility and did drive by a number of military sites and access maps of the facilities on his computer. At the suggestion of his informant friend, he met with an undercover agent and arranged to obtain a sample of an illegal explosive. But the painfully long and rambling recordation of that meeting with the undercover agent reveals that Mr. Revak had no real target and only a vague plan in mind. He jumped from one possible plan or target to another and articulated very little by way of specifics concerning what he was going to do and how. Some of what Mr. Revak said made no sense and the tape demonstrates that Mr. Revak knew next to nothing about explosives.

DEFENDANT'S SENTENCING
MEMORANDUM - 5
(Paul Douglas Revak CR03-291L)

**FEDERAL PUBLIC DEFENDER**
1111 Third Avenue, Suite 1100
Seattle WA 98101
(206) 553-1100; fax (206) 553-0120

The agent had to advise Mr. Revak on what types and amounts of explosives he might need. Mr. Revak was in over his head.

The government also points to a manifesto Mr. Revak composed and items seized from his apartment such as camouflage clothing and paint as further indicators of Mr. Revak's resolve. The manifesto is an unremarkable expression of dissatisfaction with our government's activity in Iraq and Afghanistan. It does not contain a threat or a plan. Articles found in Mr. Revak's room were not part of a plan. Many of Mr. Revak's associates at Western Washington confirmed that he wore the seized camouflage items while playing Capture the Flag at school. That game is a popular nighttime activity on campus.

Mr. Revak has had a lifetime fascination with the military, aircraft and guns. These interests are reflected in his talk. Many of his friends and schoolmates confirm these topics are commonplace with Mr. Revak and do not suggest a budding threat. Mr. Revak is intensely political and many of his fellow students observe that he will make statements to get attention or to get a rise from someone. Mr. Revak's interests and intensity draw mixed reviews from his peers. But those who know him best do not believe he would ever act to hurt anyone. (See e.g. PSR at ¶ 23.)

The circumstances leading to Mr. Revak's conviction beg a host of questions. It is difficult to reconcile Mr. Revak's conduct with his background and one has to wonder what might have happened. Mr. Revak above all questions his conduct.

Mr. Revak has now spent six months in jail thinking about how he was thinking in May and June and what he did. He is ashamed, he is sorry and he is determined not to reoffend. He is amenable to any suggested condition of supervision. He is confident he will succeed. Others believe in Mr. Revak.

By all accounts, Mr. Revak is smart and capable. He is a hard worker -- he has maintained part-time employment throughout high school and college and has always worked

DEFENDANT'S SENTENCING
MEMORANDUM - 6
(Paul Douglas Revak CR03-291L)

**FEDERAL PUBLIC DEFENDER**
1111 Third Avenue, Suite 1100
Seattle WA 98101
(206) 553-1100; fax (206) 553-0120

1  full-time during the summer.  He hopes to complete his college education.  He is motivated as

2  never before.  There is no reason he cannot succeed.  The attached letters from friends and

3  family describe a respectful, quiet, helpful and pleasant brother, neighbor and friend.  This

4  community support can only buoy his resolve.  Mr. Revak's background and support system

5  offer cause to think he can meet his rehabilitative goals.  Long-term supervision brings

6  additional tools including the insight and support of professionals who know how to identify

7  and address emotional needs and problems of individuals under supervision.  This resource is

8  important.  Mr. Revak's attempt to obtain explosives was dangerous.  He needs to continue to

9  address that conduct.  The longest possible term of supervision seems the most sensible

10  sentencing solution.

11        **D.    THE PLEA AGREEMENT**

12        In its sentencing recommendation, the government argues that Mr. Revak "has already

13  received a substantial benefit through the entry of this plea" given the comparative seriousness

14  of the charges contained in the original Indictment.  We respectfully disagree.  In our view,

15  Mr. Revak was overcharged in the original Indictment.  During plea negotiations, we

16  presented our position that the charges in the Indictment could not be proven and we

17  discussed with government counsel authority supporting our position.  See e.g. United States

18  v. Buckalew, 859 F.2d 1052 (1st Cir. 1988); United States v. McNeill, 887 F.2d 448 (3d Cir.

19  1989).  We proposed a plea to a charge of attempted possession of explosives -- a charge we

20  felt fit the facts.  To ensure that the sentencing range included a field of options, we agreed

21  that we would not argue for a three-level decrease from the base offense level pursuant to the

22  attempt provisions of USSG § 2X1.1(b)(1).  We further agreed that should the Court impose a

23  probationary sentence, that the period of supervision would be five years.  Finally, despite Mr.

24  Revak's ties to the community, we made a strategic decision not to pursue release pretrial.

25  Mr. Revak has been in custody for six full months.  These concessions and decisions were

26

DEFENDANT'S SENTENCING                              **FEDERAL PUBLIC DEFENDER**
MEMORANDUM - 7                                       1111 Third Avenue, Suite 1100
(Paul Douglas Revak CR03-291L)                              Seattle WA 98101
                                                    (206) 553-1100; fax (206) 553-0120

1  made to facilitate the plea bargaining process with the goal of reaching an agreement that fit

2  the interests of all parties.  While we greatly appreciate the government's willingness to

3  negotiate and its ultimate charging decision, we do not think Mr. Revak was awarded a

4  "substantial benefit" and he should not be penalized for the agreement he struck beyond the

5  concessions he has already made.

6  **IV.**    **CONCLUSION**

7         For all the foregoing reasons, we respectfully request that the Court sentence Mr.

8  Revak to a five-year term of probation under the conditions recommended by the Probation

9  Department in its Presentence Report.

10        DATED this 1st day of December, 2003.

11                                s/ Thomas W. Hillier II WSBA No. 5193
                                Attorney for Paul Douglas Revak
12                                Federal Public Defender
                                1111 Third Avenue, Suite 1100
13                                Seattle WA 98101
                                206/553-1100 voice
14                                206/553-0120 facsimile
                                tom_hillier@fd.org
15
                                s/ Timothy R. Lohraff Bar No. 32145
16                                Attorney for Paul Douglas Revak
                                Federal Public Defender's Office
17                                1111 Third Ave., Suite 1100
                                Seattle, WA  98101
18                                206/553-1100
                                206/553-0120
19                                Tim_Lohraff@fd.org

20

21

22

23

24

25

26

# EXHIBIT A

Paul Revak was always a great friend; very open and willing to listen as well as opinionated. He played flute in band with me from 6th grade on, and I've known him since elementary school. He had a very sharp wit and good sense of humor. He never skipped class or smoked like most high school students did. He never got into any trouble whatsoever for that matter. I've spent a lot of time growing up with him and he's always been a fun, controlled, and a down to earth person. He even visited my apartment last summer and it seemed he hadn't changed since starting school at Western Washington University.


Written by Jeremiah Pieter VanDamme
June 12, 2003

October 30, 2003

To whom it may concern,

My name is Steve Thomas.  I have been a friend of the Revak family for many years.
Our relationship goes back to the early 1980s when Matt, Norma and myself attended the
University of California at Santa Barbara.  Following college, I had the honor to
participate in Matt and Norma's wedding.

Due to locations where the Matt and Norma and myself have lived, I have not been able
to see them on a consistent basis, and it has been a few years since I have seen Paul.  But
nothing that I have seen or heard of the Revaks or Paul would change my previous
opinions (stated below) of them.

Matt and Norma are fine individuals and I am proud to consider them my friends.  Matt
and Norma possess outstanding character; which they have sought to transfer to their
children.

From my experience, their family was always very important to Matt and Norma.  You
could tell from their family interactions and activities that their family was a top priority
in their life.  For example, I remember how Matt would always seek to include Paul (as
much as possible) in activities that we may have been doing together such as fishing
excursions or skiing trips, or how (when I was visiting them) we would all attend Jenny's
(daughter) basketball game together.

From the experiences that I have had with Paul, I believe that he is a fine individual who
has been positively influenced by his parents.

I trust that will be able to factor in these perspectives into your opinions and decisions.


Sincerely,

Steven D. Thomas

June 12, 2003

Federal Court Judge
Seattle, WA

Your Honor,

I am writing to provide character reference for Paul Revak.

I have known Paul and his family for 8 or 9 years now. I like Paul and I like his family. I have lived across the street for 16 years with my two daughters, age 13 and 15. We live in a friendly rural neighborhood, Maltby, in south Snohomish County. As a single mom, I work full time as a realtor for Windermere in Woodinville. My girls are active in school sports, youth group and part time jobs.

My children spent years at the bus stop every morning with Paul and his sister Jenny and the other kids at the school bus stop. I was always secure that my kids were safe there in front of the Revak's house, especially with Paul there, as the "older kid".

I know the Paul who was a boy scout proudly earning badges and going on camp outs, doing food drives and special projects and of course selling popcorn to us. ( he and his family bought our girl scout cookies too).

I know the Paul who played in the band at Monroe High School. We would sit on the bleachers at basketball games with our kids participating. He was a good student too.

I know the Paul who went to the prom, who got his driver's license, who got a job at Sears in the lawn mower department and helped me when I needed a new mower myself.

I know the Paul who was interesting to talk to, who as a teenager would talk to an adult, who is respectful, courteous and helpful. Just a real neat young man.

I don't know how things got to where they appear to be now, from the news reports I have heard. This is all so out of character for him. If he can have an opportunity to get things straightened out for himself, I believe he has the potential to contribute a lot to his community.

Respectfully,

Cynthia Blake Carpenter
8030 207th St SE
Snohomish, WA 98296
425-486-2829

June 12, 2003

To Whom It May Concern:

I am writing this letter on behalf of my older brother, Paul Revak. I know from what I've read from the newspapers and what I've seen on the nightly news that the Federal Court is trying to make my brother out to be some horrible terrorist. To put it as blatantly as possible, he isn't.

Paul is a wonderful kid, and, as many will quote me as saying so, he is one of the best people I know. Throughout my life I have watched him help others through grieving periods, strive to do well in school, and keep a level head even when times got really tough.

As far as siblings go, you can't find a better one out there. He is always willing to help me with my homework, especially history, which is his favorite subject. Paul came to several of my softball practices to help coach me and push me to do the best that I could. He would also help to warm my pitching up during the games that he was able to attend. He never missed any of my dance recitals, no matter how much he dreaded having to sit through two hours of ballet dances. He always came to my piano recitals, and has always supported my interest in music. My brother was always there, to help me when I needed help, or just to joke around with me.

Contrary to what the reader may believe, I'm not writing this just because he's my brother and I have to; I could just as easily have declined, if I truly felt the need to. Everything written on this piece of paper comes purely out of love for and devotion to Paul and every

word of it is sincere.  I know in my heart, as his sister and his friend, that Paul is just a normal kid with a good heart.

I hope beyond hope that this letter will have some impact on the reader and that I am doing some good for Paul's case.  I would really appreciate it if someone told Paul that I'm really sorry that I couldn't be there for him at his hearing, as he's always been there for me.  I had school and couldn't make it.  Please tell him that I love him, and that all of his friends are pulling for him.  Tell him that I'll see him soon and, again, that I love him.  Please do your best to help my brother through this.

Respectfully yours,

*Jenny Revak*

Jenny Revak

---

### Rick C. & Ninalei Pulliam
21806 Echo Lake Road, Snohomish, WA 98296
425-481-2935 / 360-668-2146 / fax 360-668-9756 / rick.pulliam@verizon.net

---

06/12/03

To the Judge and staff reviewing the Paul Revak case:

I have lived in the Maltby area for the past 15 years and have known the Revak's for nearly all those years. I was Paul's Cub-Master and Assistant Scout-Master for many years. With my son, we went on many outings together, hikes, scout camps, bike hikes, etc. My son, Erik and Paul Revak attended the same schools thru the years; both were in band together and attended many of the same school functions. During all that time I never viewed nor heard of a single incidence of violence, not even a "little kid's pushing match" or using angry/foul language toward another child. Paul was always quiet and polite and would discuss his opinions in a very mature and rational way. Thru the scout years I encountered the "hot-head" children many times, Paul was not one of these.

Thru all the years the Revak family has been totally engaged in their children's lives and the community. Matt & Norma attended and helped out at scout functions, I have seen them at **every** school band concert for **both** kids. Both our daughters have been in Girl Scouts and on the same softball team for the past five years and not only do they help out at practices, show up at nearly every game, but Matt has been a volunteer umpire. This year there was a real shortage of umpires so Matt volunteered to be our team's full time umpire and thus was at every game (even when his own daughter had a piano recital and couldn't attend).

In conclusion: The Revak's are solid members of the community. In my opinion Paul Revak is not a flight risk as he is well connected to his home area. I also hope that a complete and thorough investigation of these terrorist charges will be conducted. Having been involved with teenagers, having my own 19 year old son and having known Paul for many years; I imagine this case will boil down to a "**very young** adult, seeking the awe of his peers, trying to feel important, wanting to feel like a big man". I think it will be found that there was never any real chance of anything happening, just big talk and a full slice of bad judgment.

If there is any additional information you need, please contact me.

Thanks for your consideration,

Rick C. Pulliam

**Date:**      11/17/2003 10:08 AM
**Sender:** matthew.p.revak@boeing.com
**To:**      Tom Hillier
**Priority:** Normal
**Subject:** FW: Paul's letter of recommendation

Tom: For Paul Revak's file.

-----Original Message-----
From: DECKER Stephanie [mailto:sdecker@jisedu.or.id]
Sent: Monday, November 17, 2003 6:00 AM
To: Revak, Matthew P
Subject: Paul's letter of recomendation


To Whom it May Concern,

I am Paul Revak's aunt, and have known him all his life. Being the older
sister of the Revak generation that produced him, I have also known his
father all his life. Family members may be suspected to have a skewed
positive view of their relatives, so I offer my credentials as a teacher
for
20 years, and my degree in Psychology to bolster my credibility. Besides
which, I'm a first-born, OLDER sister, prone to criticism and not given to
unwarranted praise. That said, I'd like to tell you what I know personally
about my nephew, his family, and their relationships.

When Paul was born just after my own first child, I had to endure the
constant comparisons our mother made between how each was developing, and
how the grandsons were being raised. Paul always came out on top. Paul was
a
happy, well-adjusted, unspoiled child all through his developing years. He
was a sweet and loving child, who welcomed his younger sister without
jealousy or sibling aggression. He was cooperative and studious, obedient
and responsible. He did regular chores, cared for small pets, and
diligently
practiced his flute without being asked.  My comparatively rebellious,
outspoken, first-born son, (Paul's older cousin by a few months) considered
Paul a wimp. That was because he didn't get into trouble, didn't argue with
his parents, and did his homework. Even so, my son's definitive remark
about
his cousin is:
"Paul's a nice kid."

What impressed me most over the years about Paul was that he cared openly
and genuinely for his family members. He was patient and tolerant with a
younger sister most boys would have dismissed as an annoyance. He would
voluntarily accompany either of his parents on a shopping excursion, or
work
alongside them in the yard. When we visited, he would throw a football for
as long as my youngest son's arm could hold out. He would stay near and
help
clear and dry dishes to be part of his visiting aunt's conversation, when
most teenagers would have long since disappeared.

Paul has two of the most devoted parents that ever bore children. Devoted
to
him and his sister, and devoted to their life in America. Matt and Norma
live and die by their kids successes and failures. They attend every school
function, travel with the team or the band, and coach their kids through
performances, projects and extra curricular interests like scouting. Norma
was Den Mother and Matt was Cubmaster while Paul was involved in scouts

for years. They camp, they ski, they travel to historical landmarks and genuinely involve themselves in their kids' education and enjoyment of the great American landscape and heritage that is theirs to share. My family lives overseas, and we have never been able to entice them to visit us. The response is always, "Why would we want to go there when there's so much to enjoy right here?" They are proud of their country; its resources, history and opportunity, and they share this legacy of America with their kids.

I hope that the court will consider Paul's goodness and decency as a person,
and his parents' ability to care for and guide him, when his future is determined. I know that this family has strong roots, sound values, and real
love. I can't imagine a better place for Paul. And I know that together they
will put things right between them, and Paul's future will be the bright path it has always promised to be.

Respectfully,

Stephanie Revak Decker
Jakarta International School,
Jakarta Indonesia

June 12, 2003

U.S. District Court
Western Washington

Re: Paul Douglas Revak

To Whom it may concern:

My name is Kathi Sutton and I am a neighbor of the Revak family. I have lived in Ponderosa Acres for 18 years and met the Revak family soon after they moved in around eight years ago. Matt and Norma are great, friendly , responsible people that we are happy to have living in our neighborhood. They are very responsible parents and were very involved in their children's lives. Their children, Paul and Jenny have been a pleasure to have in our neighborhood as they have grown. Paul  has always been a good young man  and never caused any trouble here. What I really noticed about Paul was that he was always polite and respectful of adults . He would watch out for his little sister Jenny , and I remember when he would go with her on Halloween to be sure she was safe. Paul has always been very responsible , helping out at home and working part time at Pennys department store , while going to school. Paul Revak was always a nice , well mannered young man who never got into any trouble.

Sincerely,     Kathi Sutton

Kathi J Sutton

Kathi Sutton
7925 207th St. SE
Snohomish, WA 98296

**J  .       D  O  U  G  L  A  S       M  c    C  O  N  N  E  L  L**
4  1  7  4      O  A  K  H  I  L  L      A  V  E  .      P  A  L  O      A  L  T  O  ,      C  A      9  4  3  0  6

Thursday, September 18, 2003

To Whom It May Concern

My wife and I have known  Paul Douglas Revak, our grandson, since birth.  Throughout
these past twenty years we have found Paul to be  a good young person, whose years in
Scouting imbued in him the values of the Boy Scouts of America. He  has certainly
followed the Scout Law and shown  himself to be trustworthy, loyal to his family and
country, friendly, kind  and helpful to others , courteous in all of his relationships with his
peers and adults.  Paul has had to be thrifty because  neither  we nor his parents are
wealthy. He has been obedient to his parents and grand parents, teachers and others in
authority   throughout his life. We suspect that, at the very worst,  he has been out-
spoken  regarding certain policies of the present administration, speaking with the
tendency of youth to "talk big".

Even if Paul was not our grandson, but simply a young man of our acquaintance, we
would hold him in the same high regard, and commend him to any and all. He  certainly
poses no threat to society and should be permitted to get back to the business of getting
an education  and becoming a productive member of society.

Sincerely,

J. Douglas McConnell
for J. Douglas and Gloria A. McConnell

September 23, 2003

To Whom It May Concern,

I am writing regarding Paul Revak who has lived next door to my family and me for
many years. I have observed him and his family often and have found him to be well
mannered and polite.  He always was friendly to me and I know he treated his family
with kindness and respect. He and his sister Jenny played well when younger and I know
that Jenny has always looked forward to his return when he was away at college.

His family works and plays together often.  They are an industrious and hard working
family who care about the appearance and safety of our neighborhood and do their part to
contribute.


Sincerely,

*Sheryl Call*

Sheryl Call

June-14-2003

To Whom It May Concern,

I have Know Paul Revak for 7 years, he is a quite-soft spoken young man. I am a personal friend of the Revak family.

I had the pleasure of working, and being friends with Norma, and Paul, they' are a wonderful american Family. Paul may have a very Colorful imagination, but he would not ever hurt or government or anyone. He might talk big but he is a good young man, and would not hurt a soul.

Paul was raised in a very loving home. Norma, and Matt, are great parents I Know this family. I Know Paul and I Know he never meant anything he said.

America is a free Country. We are supposed to have freedom of speech. What Went Wrong? Why is one of our young sitting in prison? Is america becoming like Russia? I Know Paul meant no harm. Please Consider his back ground, and his wonderful family. They are a great asset to our Country.

Thank you.

Lillie E. Powers Galbraith
1121 244th St. S.W. #45
Bothell Wa. 98021

Ernest W. Fletcher, Sears Employee

5532 151st PL SW

Edmonds, WA 98026

September 29, 2003

To Whom it May Concern:

I've worked with Paul as a part-time Sears employee since he was a senior in high school. While my time with Paul was limited to weekends, a busy time for Sears, he seemed to be a typical teenager. He was a quiet, soft spoken young man, who kept to himself. Paul's behavior and mannerisms were no difference than any other young man his age. As a co-worker, I found Paul to be pleasant and an easy person to work with.

Sincerely,

Ernest W. Fletcher

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on December 1, 2003, I electronically filed the foregoing with the

3 Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4 following:

5              Andrew Hamilton
             Assistant United States Attorney
6              601 Union Street, Suite 5100
             Seattle WA 98101

7

             Christopher Luscher
8              United States Probation
             701 Fifth Avenue, Suite 4100
9              Seattle WA 98104

10

11                          s/ Thomas W. Hillier II WSBA No. 5193
                         Attorney for Paul Douglas Revak
12                          Federal Public Defender
                         1111 Third Avenue, Suite 1100
13                          Seattle WA 98101
                         206/553-1100 voice
14                          206/553-0120 facsimile
                         tom_hillier@fd.org

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S SENTENCING
MEMORANDUM - 9
(Paul Douglas Revak CR03-291L)

**FEDERAL PUBLIC DEFENDER**
1111 Third Avenue, Suite 1100
Seattle WA 98101
(206) 553-1100; fax (206) 553-0120